May it please the court, James Spife of Federal Defenders on behalf of the appellant Mr. Ruiz. I'd like to reserve a few minutes for rebuttal. Alright, please watch the clock. Thank you, Your Honor. Mr. Ruiz's sentence was substantively and procedurally unreasonable. The district court imposed a guidelines-based sentence that was inflated by criminal history points having no empirical basis and by a miscalibration of the sentencing ranges based on a mistaken assumption about the calculation of good time credits. And despite these two specific concrete claims, the district court refused to provide any explanation for why it was not adjusting the sentence to take into account these undisputed excesses in the guideline sentence. So let me turn first to the recency points. The recency points created an unreasonable inflation of the guideline sentence in this case. There were two extra points added to Mr. Ruiz's criminal history, which moved him up from criminal history category two to category three. In concrete terms, that meant the low end of his guideline range went from 41 months to 46 months. Now, as you're aware, the sentencing range was a little bit different. The sentencing commission has amended the guidelines to delete these recency points. Did the amendment go into effect as planned? Yes, it did. Congress did not, despite what the prosecution argued for not applying them early, was that Congress might act. Congress did the same thing it's done for every amendment except two in the last 20 years. It allowed the amendment to go into effect in November. That is now the law. There is the reason for the amendment, pointed out. The commission did study, spending a couple of years, to find that there was no valid empirical evidence showing a significant penological effect for applying these two recency points, and therefore they deleted them from the guidelines. Now, this situation, I apologize directly to Kimbrough. Same thing applied there. The commission had set up a certain ratio of crack to cocaine, which was challenged in the district court. The evidence was presented to show that there was no empirical basis for the 100 to 1 ratio, and the Supreme Court said that was a valid objection to make, and that if the district court was satisfied that there was no empirical basis to the guidelines calculation, that a variance was proper to ensure parsimony of the sentence, that it was not greater than needed. That's the same situation here, only even stronger, because the commission at the time in Kimbrough had not recognized, had not by an amendment, that there was a problem with the crack ratio. But here, the sentencing commission had already determined that there was no reason for the district court to refuse to apply a variance. The problem is you're saying it was incorrect for the district court to apply the law, the guidelines that was in effect at the time of sentencing, when in fact the sentencing guidelines actually instruct the sentencing court to apply the guidelines in effect at the time of sentencing. That's correct, but that would be the same argument that could be made in Kimbrough, that the district court was required to apply the ratio, the drug ratio, in force at that time. I don't think Kimbrough said required. Well, yes, he was required to do it, but what the Supreme Court said was that we can understand why the district courts might be very downward taking this consideration into mind. Correct. And if the evidence does indeed show that there is no basis for the guidelines policy, for the calculation or the policy of the sentencing commission, it would in fact produce a substantively unreasonable sentence. That is, it would produce a sentence that's greater than is supported by the empirical facts. Well, isn't the difference with Kimbrough that the Supreme Court recognized that the district courts had discretion to vary from the guidelines? So if you had prevailed in the district court here, of course that would be a valid argument in the face of a government objection on appeal that the district court had the discretion. But you're asking for something different, I think. You're asking for the discretion to vary if it's convinced of the evidence. But once it's convinced of the evidence, to impose a sentence that is higher when there is no empirical basis to it, that is procedural error. That is substantive error. This Court in Carkey said that a sentence is procedurally unreasonable if it's based on clear error of fact. Well, a sentence that is elevated on the basis of, in fact, not a lack of imperial evidence, but a finding of there is no empirical evidence is unreasonable substantively and procedurally. And so it would violate parsimony, the overarching sentencing condition, to impose a sentence greater than is justified by the facts. Okay. What was the guideline range within which the district court sentenced your client? I believe it was 46 to 57 months. And then if you did reduce it for the recency, subtract the recency points, what would the sentencing guideline range be? It would then be, just one second, Your Honor. It would be, it would lower him one criminal history category, which would have been, I believe, 41 to 51 months. Right. And he was sentenced to the low end of the guidelines at 46. Correct. So that's still within the range that you would propose. So what's the harm? Well, I think the problem is that it was clear that Judge Sabraw intended the government and the probation recommended a higher sentence, mid-range, high range of the guideline sentence. Judge Sabraw chose the low end. And I believe that his same reasoning would have applied if, for some reason, he was criminal history category 2 rather than 3. I don't think that Judge Sabraw's reasoning was based on the criminal history category. I would assume that he would have applied the same reasoning to impose a low end of the proper category. So it would have been 41 rather than 46. Tell us whether this is a categorical crime. The prior conviction? Yes. Yes, Your Honor. I believe it is not categorical. And for the reasons specified in the brief is that because under the new amendment to the guidelines, the recent amendment, Amendment 722, to be a forcible sex offense, there has to be some intentional coercion. The description that the Sentencing Commission gave and the cases that they distinguished in their reason for the amendment all relate to different types of coercion other than force. They first want to clarify that you don't need physical force to be a forcible sex offense. But you can have it in two other major instances, where there is no consent or where there is consent in fact, but it's vitiated legally because of incapacitation, involuntariness, or coercion. Now, the problem with the California statute is that it doesn't require lack of consent. That's pretty clear. And that's not unusual or crazy, as the government was pointing out, because that's what the Fifth Circuit found was true of the Texas and Missouri statutes that they looked at. And that's accommodated in the Sentencing Commission. So that's not hypothetical or fantastical. State statutes do allow sex offenses that are still consensual. What makes them offenses is when that consent is vitiated legally because the person was drugged, it was fraud, or there was some other type of coercion. Now, the problem with the California offense is that coercion or that offense can be committed where the perpetrator does no intentional act to create the fear of harm, but simply takes advantage of a subjective fear of the victim, even when that subjective fear is objectively unreasonable. That's what the California case law says. So it doesn't require an intentional act by the perpetrator. It's broader than the types of sex offenses that were listed in Amendment 722. Now, 722 says including, which means, of course, there are other things. But the general canon of construction called eos dem generis means that any additional examples we would add must be of the same type. And all of the types that are listed by the commission are intentional acts, where the perpetrator intentionally overbears the will of the victim. In the case of the California case, and I cited a specific case which is right on point, it's not hypothetical under Duenas-Alvarez, is the People v. Young case. That's where the court found there was insufficient evidence for a conviction because number one, there was no evidence that the perpetrator threatened the victim. And number two, there was no evidence that the victim feared the perpetrator. Now, the logic, the necessary logic of that ruling is that if either one of those was present, that would have been sufficient for a conviction. So if the victim simply said subjectively, I'm afraid, even when that was not objectively reasonable because the perpetrator had done nothing to promote that, that would have been sufficient for a conviction. That's broader than what is talked about in Amendment 722. That's broader than involuntary? Yes, because I think because the commission listed three different things, they all have to mean something different. Coercion is some sort of assertion of authority or some sort of duress that's not physical. Incapacitation means lack of, it means age or mental incapacity. Involuntariness must mean something else. And because the cases the commission talked about include fraud and drugging, then it's reasonable to believe that involuntary means it's because the person was deceived or the person was drugged. And those require intentional acts, a deception, a drugging, an assertion of were reviewing and said did not constitute forcible offenses at the time. The commission meant to fix that by saying, yes, these things are forcible because there's an intentional act that vitiates the consent. Let me ask you, what is your strongest California case that supports your argument that your argument is not some hypothetical legal imagination but that there's really a case that has? The People v. Young. You think People v. Young? Yes. Okay. That case, it's kind of different. It's kind of the mirror image of what we would usually look at. What we usually look at is a case where the state court says this is sufficient to convict somebody and they rely on an overbroad feature. That's what we usually see is a conviction that's based on an overbroad factor. Young is kind of the mirror image because they're saying this was insufficient but it would have been sufficient if it had X and Y. And the Y is overbroad. So by necessary logical implication, Young means that if there had been an unreasonable subjective fear by the victim, that would have sufficed and would not raise the double jeopardy bar, which was the real question in Young. All right. Does anyone have any more questions? No. No. Okay. You're over your time. Thank you, counsel. All right. Thanks. Good morning. May it please the Court. Daniel Zip on behalf of the United States. To address the categorical question first, the strongest case that defense just pointed to under Duanez-Alvarez, even if you read the language in that case, the way that he proposes that the Court read it in his briefs, it still doesn't get where he needs to get under a categorical analysis. The question in that case, the language at the end of the case said, essentially, someone could have a subjectively unreasonable fear of physical injury and that that didn't have to be created by the perpetrator. And that's one point. But what he failed to address in his brief here at argument is that the next sentence says that the perpetrator has to knowingly take advantage of that subjectively unreasonable fear. And saying that his central argument in his brief is that he could accidentally take advantage of someone, but that's not what the cases say. Even if we're willing to read this kind of mirror image case where the Court didn't actually convict someone under this theory, even under that language, you would still need someone to knowingly take advantage of a fear that he knows about in order to accomplish sexual intercourse. And that's coercion. And at the very least, it's involuntary. In addition, even stepping outside of the kind of textual argument proposed by the defense in this case, if you look at the 2008 amendments to the guidelines, when they added this new language that said that including where consent to conduct is not given or is not legally valid, they specifically cited to the Fifth Circuit's case in Gomez-Gomez, and that was a case that dealt with California Penal Code 261A2. So the sentencing commission in Congress passed this amendment, said this amendment is going to change the results of cases like that in Gomez-Gomez that dealt with the very California statute that we're addressing here, and that's pretty strong evidence that the intention of the guideline change was to cover this statute that we're addressing here. Turning to the defense argument on the recency points, it simply can't be the case that as soon as the sentencing commission proposes an amendment to the guidelines, that at that moment going forward, every district court across the land abuses its discretion by applying the guidelines as they're still in effect at that time. As Your Honors pointed out, the Kimbrough line of cases say that the district court in this case could have looked at the proposed amendment and could have used his discretion to lower the criminal history category, but there's nothing in those cases that say that the district courts abuse their discretion if they don't. And in this case in particular, the court gave a lot of attention to the actual issue of criminal history. He looked at the fact that this defendant had a criminal contact when he was 17 years old for the lewd and lascivious conduct with a minor. He weighed that along with 10 years later the fact that this defendant was convicted of a violent sexual crime, and he said the importance of that conviction could not be overstated. He weighed the actual individual before him. He looked at all the factors, and he said, respectfully, criminal history category 3 is appropriate in this case. The fact that the commission had proposed an amendment doesn't make that an abusive discretion. Well, if it were a policy amendment, certainly, but when it's an amendment that is based on a lack of empirical basis for the current calculation, doesn't that suggest something different? In other words, that it then becomes odd to rely in the way that the system does on the guidelines calculation if the guidelines calculation by the commission's own admission doesn't rest on a sound empirical basis. Well, I think the district court certainly could have taken that into consideration, but as I said at the outset, that can't result in an automatic abusive discretion between the time the commission proposes it and the time Congress enacts it. If that were the case, then what would be the point of even having Congress involved? At the point the commission made its finding, then all course would be ---- Well, I think it probably ---- sorry to interrupt. It probably depends on the difference between a policy change, which the commission does all the time, of course, in amending the guidelines, and a change, a Kimbrough-style change where it's based, right, post-Kimbrough-style change where the change is based on a lack of empirical basis for the guideline in question. In other words, it was based on some assumption that proves to be false. Well, again, even in that case, even if it were an empirical decision from the commission, I don't believe that that would create an automatic requirement, an automatic abusive discretion for district courts not to apply that, at least until Congress has gone forward and given its blessing. And in this case, the district court gave a full individualized analysis of the criminal history of the defendant in front of him and determined that a criminal history Category 3 was appropriate. What about Mr. Phipps' further argument that the district court failed to give a reason for not ---- for rejecting the variance based on the recency points? Well, Your Honor, to that, I would say the court in Cardee said that the amount of explanation that a court has to give varies based on three different factors, based on the complexity of the issues involved, based on whether the sentence was within or without the guidelines, and based on the strength of the proper reasons. In this case, the district court was dealing with a very straightforward 1326 case. It had very strong reasons, given the violent, sexual nature of this defendant's criminal history, and he imposed a sentence that was at the low end of the guidelines. It's not the law that the district court has to go through all the arguments proposed by defense counsel. There's 30-plus pages of sentencing briefing in this case and address in detail every single issue that the defendant proposed. In a straightforward, simple case like this, with a within-guidelines sentence, the district court did exactly what it was required to do, and that is to focus on the 3553 and sentencing factors that it thought were most important, discuss why that was, and then impose a sentence that was within the guidelines. And it simply weren't required to, in detail, flesh out every single one of the defendant's arguments. We want to know that the district court was aware of its options. Now, do you think that it had discretion? Discretion to lower the criminal history based on the recency points? Mm-hmm. I do think that. I mean, both parties addressed this issue in their briefing, and the district court confirmed that it had considered the issue and declined to do what defense was asking them to do. So it was certainly before the court, but given the simple nature of this case and all the other sentencing factors it was considering, it simply didn't give explanation to this very specific question. If the Court has any other questions. Thank you. All right. Thank you, counsel. You are over your time, but I'll give you a minute. All right. Very brief. I just want to say that if there's no empirical basis, it's regardless of whether there's amendment or not, the argument was not that the guideline amendment should be applied early, but that there was no empirical basis for it. And that would apply whether there was any amendment. And that's just what happened in Pepper just this week. There's no amendment. The Supreme Court said there should be a variance when there's no reasonable basis for the guideline's policy. There was no explanation about it. And this Court can reverse on that basis alone. Yes is not an explanation. That's just a ruling. As regards to the Young case, taking advantage of a fear is not causing that fear. We are talking about forcible sex offenses, not simply taking advantage of something. I analogize it to the difference between theft and robbery. Taking advantage of a fear to steal property is not the same thing as robbery,  What about Mr. Zipp's point that the commission specifically wanted to have this specific statute covered? That's incorrect, Your Honor. In fact, the Gomez-Gomez case did deal with this statute, 261, but it said it was not forcible because it didn't require physical force. Now, I'm not arguing that that's not. That's the reason this is overbroad. I'm arguing this statute is overbroad because it allows non-intentional behavior. So Gomez-Gomez is actually totally off point here. They said you don't need physical force to be a forcible sex offense, and I have no dispute with that. All right. Thank you, Counsel. United States v. Ruiz de Polonio is submitted. We'll take up Long v. Holder.
judges: Kavanaugh, Fletcher B. , Wardlaw